IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1922.

---

WILLIAM J. BROWNE, RELATOR, v. WILLIAM P. LEE,
RESPONDENT.

Argued October 5, 1922—Decided October 13, 1922.

1. Section 19 of the Walsh act (*Pamph. L.* 1911, *p.* 483), in dealing with the matter of an election to be held upon the proposition of whether or not a municipality should revert to its charter form of government, provides that the sufficiency of the petitions for such elections should be ordered as provided by article 4 of the act, when in fact there is no such article—*Held*, that a *mandamus* will not issue to compel the city clerk to prepare for such election under some other section of the act not specifically adapted to the particular proposition.
2. A *mandamus* never issues where the legal obligation to perform the act, which is the subject-matter of the application, is not clear.

---

On rule to show cause why a *mandamus* should not issue.

Before GUMMERE, CHIEF JUSTICE, and Justices SWAYZE, PARKER, KALISCH and BLACK.

For the relator, *John Warren* and *Jacob Feinberg.*

For the respondent, *Robert H. McCarter* and *Aaron A. Melniker.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The relator and others presented to the city clerk, of Bayonne, a petition praying for the submission to the electors of that municipality at the next general election of the question whether or not the commission form of government provided by the act entitled "An act relating to, regulating and providing for the government of cities, towns, boroughs and other municipalities within the state" (*Pamph. L.* 1911, *p.* 463), commonly known as the "Walsh act," and under which the city is now functioning, should be abandoned, and the city resume its charter form of government.

The clerk, acting presumably under the advice of the city counsel, refused to accept and file the petition, and thereupon the relator obtained the present rule, requiring said clerk to show cause why a writ of *mandamus* should not issue commanding him to accept and file the petition, to forthwith examine the same as required by law, and to thereafter attach to the said petition his certificate showing the result of his examination, and to proceed thereon in accordance with the statute in such case made and provided. We gather from the arguments of counsel in the cause that the ground of the clerk's refusal was that the legislature had provided no method to be followed, either by him or by any other branch of the city government, in bringing about the results sought to be obtained by the petitioner—no machinery which could be put in motion for its accomplishment.

The question to be resolved, therefore, is whether the city clerk was justified in the position taken by him, for it must be conceded that the duty asserted to rest upon him is a purely statutory one, and that therefore unless the statute points out the steps to be taken and culminating in the

election sought to be obtained by the relator and those associated with him, the writ prayed for ought not to be allowed.

Counsel for the relator insists that the legislature has clearly pointed out the various steps to be taken from the time of the filing of the petition up to and including the holding of the election, while counsel for the respondent just as vigorously asserts the contrary to be the fact. In this situation we are required to examine the statute itself in order to ascertain whether the one contention or the other is sound.

The section of the Walsh act, as originally approved, which dealt with the matter of a reversion to the city charter form of government, is section 19. *Pamph. L.* 1911, *p.* 483. It provided that upon the petition of twenty-five per centum of the electors a special election shall be called at which the proposition shall be submitted; and that if a majority of the votes cast at such special election be in favor of such proposition, then the city shall thereafter be governed under its charter provisions. The section then declares that "the sufficiency of such petition shall be determined, the election ordered and conducted, and the results declared generally as provided by article 4 of this act, in so far as the provisions thereof are applicable." An examination of the statute discloses that it contains no "article 4," nor, in fact, any other article, the whole act being divided into sections, Nos. 1 to 20, inclusive. Section 4 of the act deals solely with the powers conferred upon the governing body of the municipality and to be exercised by the several commissioners composing it. Manifestly, therefore, the phrase "article 4" was not merely the inadvertent use of the word "article" for "section." This fact is suggestive that the original draft of the statute contained a provision designated as "article 4," indicating the steps to be taken in the holding of the special elections therein provided for; that during its passage through the legislature this provision was eliminated, and that there was an unintentional failure on the part of the legislative body to substitute anything in its place, so far as section 19 was concerned. And this theory receives sup-

port from the fact that every other section of the act dealing with the matter of elections to be held under it, viz., sections 15, 16, 17 and 18, provides in detail the various steps to be taken for the purpose of bringing about the elections to be held under those sections.

The argument on behalf of the relator is that this suggestion is without merit, for the reason that section 15, which provides for the holding of an election for the purpose of determining whether or not the incumbent of an elective office shall be removed therefrom, provides machinery for that purpose which is equally appropriate for the holding of an election to determine whether or not the city shall resume its charter form of government; and that, therefore, it is to be conclusively presumed that by the words "article 4" in section 19 the legislature intended to indicate section 15. But in view of the fact that sections 16, 17 and 18, which deal respectively with "initiative" and "referendum" elections, and the election to be held for determining whether or not the Walsh act shall be adopted, provide machinery for their holding quite variant in some respects from that provided in section 15, it is difficult to perceive how a court is exercising a judicial function in selecting, from among these variant sections, the method which it considers best adopted to the holding of an election under section 19, and arbitrarily declaring that this method is the one intended to be designated by the legislature by the use of the words "article 4."

Looking at the matter in the light most favorable to the relator, and without considering the subsequent legislation on the subject, the most that can be said is that the legislature probably, but not certainly, intended that the provisions of section 15 should be applicable to section 19. In this situation the writ ought not to go, for the rule is thoroughly settled that a *mandamus* never issues where the legal obligation to perform the act which is the subject-matter of the application is not clear. *Vreeland* v. *Jacobus, 26 N. J. L.* 135; *Nicholson Pavement Co.* v. *Newark, 35 Id. 396; Plain-*

*field* v. *Runyon*, 42 *Id.* 568; *Secaucus* v. *Kiesewetter*, 83 *Id.* 227.

There is another reason why, in our opinion, the application for the writ should be denied. The original scheme of the act of 1911 was that the matter of the recall of officers and of reversion to the charter form of government should each of them be determined at a *special* election to be called for that purpose; and the machinery provided by section 15 (and amplified by a supplement to the act passed in 1915— *Pamph L., p.* 622) was intentionally adapted solely to such elections, and not at all to the submission of public questions to be voted upon by electors at general elections. In 1917 the legislature amended section 19 of the statute by enacting that thereafter the question of reversion to the charter form of government should be submitted to the voters "at the *general* election preceding the year in which commissioners are regularly to be elected," and then re-enacted the original provision that the election should be ordered and conducted as provided by "article 4" of the act (*p.* 146). It can hardly be said, as a matter of judicial construction, that when the legislature, in 1917, declared that the election should be ordered and conducted as provided by "article 4," it was the clear legislative intent that the method to be followed—the machinery to be used—in so doing was that created by section 15 of the act, which, as I have stated, was not at all adapted for use in preparing for a general election; and that the provisions of our statute regulating the holding of general elections, so far as they applied to the submission to the electors of public questions to be then voted upon, should be overridden. This latter difficulty is attempted to be surmounted by counsel for the relator by asserting that what the legislature actually intended by the supplement of 1917 was that there should be a special election, held upon the same day as that fixed for the general election, at which special election the question of reversion to the charter government should be voted upon. But the difficulty with this contention is that it is in the face of the express provision of the statute that the matter shall be voted

on "at the general election," not at a special election held at the same time.

The rule above recited and established by the authorities referred to requires that the application for *mandamus* shall be denied, and it will be so ordered.